## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DIANE KLIVINGTON, D.O.** | ) | |
| **P.O. Box 1685** | ) | |
| **Niceville, FL 32578** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** 1:23-cv-402 |
| **v.** | ) | |
| | ) | |
| **THE DEPARTMENT OF THE AIR** | ) | |
| **FORCE; ROBERT I. MILLER, in his** | ) | |
| **Official capacity as Surgeon General of** | ) | |
| **the Air Force; THE DEFENSE HEALTH** | ) | |
| **AGENCY; THE DEPARTMENT OF** | ) | |
| **HEALTH AND HUMAN SERVICES; and** | ) | |
| **JOHN DOES 1-10.** | ) | |
| **Defendants** | ) | |

## COMPLAINT

The Plaintiff, Diane L. Klivington, D.O. (hereinafter "Dr. Klivington), by and through

her attorneys, Tully Rinckey PLLC, as and for her Complaint against the Defendants,

Department of the Air Force, Robert Miller in his official capacity as Surgeon General of the Air

Force, the Defense Health Agency, the Department of Health and Human Services, and John

Does 1-10 (collectively "Defendants"), alleges the following:

## INTRODUCTION

1.  This action is brought by Dr. Klivington to reverse an injustice that occurred with respect

to actions taken by the Defendants to restrict Dr. Klivington's privileges as an OB/GYN in the

United States Air Force. The Defendants initially took peer review action against Dr. Klivington

for conduct which allegedly breached the standard of care. However, Dr. Klivington's medical

services were not a breach of the standard of care, and most allegations against her were

unsubstantiated by a Clinical Adverse Action Hearing Panel ("CAAHP"). The few substantiated allegations did not breach a standard of care or harm patients at all, and the CAAHP unanimously recommended reinstatement of Dr. Klivington's privileges. Despite these findings and due to overwhelming conflicts of interest, unlawful command influence, and outrageous departures from policies, procedures, and regulations, Defendants Dr. Klivington's incomplete adverse action to the National Practitioner Data Bank ("NPDB") as incompetent – a characterization not alleged or concluded during any portion of her adverse action process.

2.   Dr. Klivington brings this action against the Defendants to have her adverse administrative action overturned and the report to NPDB rescinded. The Defendants' findings and final decisions throughout Dr. Klivington's appeal process were unsupported by the evidence, fail to identify or conform to any standard of review, are rife with collusion and unlawful command influence, and therefore deprive Dr. Klivington of due process of law.

**JURISDICTION AND VENUE**

3.   This action arises under the Fifth Amendment to the United States Constitution and 5 U.S.C., Section 701, *et seq*. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 28 U.S.C. 1331 and 42 U.S.C. § 1343 and any and all federal law claims plead herein for which jurisdiction and venue is attached.

4.   Venue is proper in this District pursuant to the general venue provision, 28 U.S.C. § 1391 and because a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

**PARTIES**

5.   Dr. Klivington is a resident citizen of the State of Florida residing in Okaloosa County, Florida.

6.   Plaintiff is informed and believes that Defendant Department of the Air Force ("Air Force") is a service branch of the United States Armed Forces. The Secretary of the Air Force is Frank Kendall.

7.   Plaintiff is informed and believes that Defendant Robert I. Miller ("AFSG") is the Surgeon General of the Air Force and is tasked with handling matters generally pertaining to the medical aspects of the Air Force.

8.   Plaintiff is informed and believes that Defendant Defense Health Agency is an administrative agency operating under the authority and oversight of the Department of Defense and the Assistant Secretary of Defense for Health Affairs. The Secretary of Defense Health Agency is Dr. Terry A. Adirim.

9.   Plaintiff is informed and believes that Defendant Department of Health and Human Services ("HHS") is an administrative agency which administers and regulates health and social services, including the operation of the NPDB. The Secretary of the Department of Health and Human Services is Xavier Becerra.

## **BACKGROUND FACTS**

10. Dr. Klivington commissioned into the United States Air Force as a dual Board-Certified OB/GYN on or about August 17, 2017.

11. At all times relevant to this action, Dr. Klivington was assigned to the 96th Medical Group stationed at Eglin Air Force Base.

12. On July 12, 2018, Lt Col Joseph Forester, Credentials Function Chairperson, notified Dr. Klivington that her clinical privileges were placed in abeyance in response to allegations of potential clinical issues and "concerns of professional judgment" and she was assigned to administrative, non-clinical duties as assigned by her leadership.

13. On July 19, 2018, Lt Col Elizabeth Gaida was appointed as a Quality Assurance Investigation ("QAI") investigating officer to conduct a quality assurance investigation into whether the allegations could potentially have adverse effects on patient safety and Dr. Klivington's ability to deliver safe and effective care to patients.

14. On August 29, 2018, Lt Col Gaida completed her investigation and concluded that Dr. Klivington failed to meet the standard of care with several patients but acknowledged her investigation of extraneous and extremely personal evidence, such as how "extreme duress from a fractured home life, allegations of physical and sexual abuse, and the crisis of her child admitted to inpatient psychiatry unit" undoubtedly contributed to the concerns, and "as a fellow physician, surgeon, and mother, I do not see how anyone could continue working unaffected by such extreme duress at home."

15. The QAI report further concluded that she was troubled that "OB/GYN Flight Commander concerns regarding Dr. [Klivington's] mental health were raised and a Command Directed Evaluation requested but [was] denied by the Squadron Commander."

16. The QAI recommended that Dr. Klivington's OB/GYN privileges be restricted to "with supervision" for at least 180 days, her schedule be adjusted to give Dr. Klivington time to resolve her personal and legal issues, and a psychiatric evaluation to be completed.

17. The QAI further questioned whether the intensive supervision and psychiatric evaluation could or should be performed at Eglin AFB to "reduce the possibility or appearance of prejudice or favoritism."

18. On September 26, 2018, Dr. Klivington was notified by Col Pamela Smith, 96th Medical Group Commander, that the Credentials Function Review ("CFR") met to consider the evidence

surrounding Dr. Klivington's abeyance and recommended to Col Smith that a Peer Review Panel ("PRP") be convened, with which Col Smith concurred.

19. On November 6, 2018, the PRP convened to review "evidence of potential clinical incompetence and concerns regarding Maj Evans' clinical and professional judgment" and "the possible presence of a mental health condition…" to determine the validity of the allegations and make a recommendation to the CFR, which in turn would make a recommendation to Col Smith as the Privileging Authority.

20. After review and discussion, the PRP recommended revocation of all Dr. Klivington's clinical privileges based on what it identified as significant deviations from what was considered standard of care and based, in part, on the lack of evidence of "an admission of wrongdoing, remorse, or a statement of willingness to change her practice or pattern of care."

21. The PRP also reviewed a Redacted Command Directed Mental Health Evaluation, dated September 17, 2018, and found "no diagnosis that was noted to impact patient care or be of concern to prevent her ability to care for patients" before inexplicably noting that Dr. Klivington "allowed [a difficult home situation] to affect her ability to provide clinical care in line with accepted standards and practices…."

22. On February 21, 2019, Dr. Klivington was notified by Col Christine Campbell, the new 96th Medical Group CFR, that a CAAHP would conduct a hearing regarding allegations of deviations from the standards of care in her practice, and that Dr. Klivington's request to reconvene the PRP was denied.

23. The Clinical Adverse Action Hearing was conducted on May 1-3, 2019, and the CAAHP issued its findings and recommendations on May 24, 2019, substantiating only five out of 21 allegations and unanimously recommended reinstatement of Dr. Klivington's clinical privileges.

24. In the CAAHP Report, the panel members unanimously found by a preponderance of the evidence that each of the five allegations, while substantiated, "did not demonstrate a breach in standard of care" and "did not harm the patient or threaten patient safety" according to regulations and after a thorough explanation of the evidence in support of the panel's findings.

25. On September 5, 2019, Col Campbell submitted a memorandum to Col Matthew Hanson, the new 96th Medical Group Commander, with an improper and unauthorized recommendation based on her review of the CAAHP findings and recommendations and the Clinical Adverse Action Hearing.

26. In her memorandum, Col Campbell indicated that she was "shocked and disgusted by the sheer lack of analysis and foresight" in the CAAHP's findings and recommendations and that its decision for reinstatement of Dr. Klivington's privileges was "in direct contrast to past reviewers' recommendations."

27. Col Campbell further opined, without any legal authority or merit, that "substantiated major allegations by definition present a threat to patient safety and the Committee dangerously minimized and neglected the risk Maj Klivington's deviance from standards presents to patient safety, quality of care, and the integrity of the Air Force Medical Service" although she did acknowledge no patients were harmed by Dr. Klivington.

28. Col Campbell went on to highlight unsubstantiated allegations and going so far to speculate that Dr. Klivington "might return to clinical care further jeopardizing patient safety, quality of care, and the good reputation of the department" and that it was "highly unlikely she would be able to be returned to patient care safely" in ultimately recommending Dr. Klivington's clinical privileges be revoked.

29. On September 18, 2019, Dr. Klivington submitted her exceptions and corrections letter concerning the CAAHP findings and recommendations to Col Hanson, specifically taking exception to the additional and inappropriate recommendation of Col Campbell and agreeing with the CAAHP findings and recommendations that she both met the standard of care and should have her privileges reinstated.

30. On November 15, 2019, Col Hanson issued his Final Decision, wherein he disapproved the recommendation of the CAAHP and request of Dr. Klivington, temporarily restricting her privileges for a "period of no less than six months."

31. Col Hanson based his decision to continue Dr. Klivington's restrictions on his own interpretation that "the preponderance of the evidence presented during the hearing demonstrated a potential risk to patient safety," a conclusion based on his completely arbitrary and unilateral determination that the CAAHP failed to "adequately explain how the substantiated allegations failed to potentially harm or threaten patient safety" – an evidentiary standard not found in any law or regulation in existence, and in direct conflict with the doctrine that one is "innocent until proven guilty."

32. Col Hanson's Final Decision memo further indicated that Dr. Klivington's appeal and adverse action case file would be forwarded to the "AFMRA/SGHQ" for review, which would then forward a summary of the file to "HQ MAJCOM/SG" for review, before finally being reviewed by the Air Force Medical Practice Review Board and rendered a decision by the "AF/SG".

33. On December 3, 2019, Dr. Klivington submitted her appeal of Col Hanson's Final Decision to the reviewing authority of that decision, Col Hanson himself, where he predictably "decided not to grant the appeal and uphold my decision…," before inserting his own

inappropriate comments in response to Dr. Klivington's assertions of retribution and retaliation by stating, "it is important to note the pattern of excuses and inability to truly take personal responsibility…."

34. During the appellate process of her adverse action and in direct response to the overwhelming failure of and retaliation by her leadership, Dr. Klivington resigned her commission and was discharged from the Air Force on or about January 27, 2020.

35. On April 27, 2020, Lt Col Jason Massengill, acting as Specialty Consultant to the USAF Surgeon General, recommended Dr. Klivington's incomplete adverse action process be permanently listed in her record in the National Practitioner Data Bank to "ensure that future employers have some historical insight, so that if a pattern is seen, it can be acted on further" and "in order to protect future patients from potential unsafe practice and harm."

36. In his recommendation memo, Lt Col Massengill points out how intensely familiar he was with both Dr. Klivington and her case, having knowledge of "this individual and her struggles since prior to her commissioning into the Air Force."

37. Lt Col Massengill also had almost complete control over the adverse action process, having assigned the Quality Assurance Investigating Officer, the members of the peer review panel, and the OB/GYN representatives on the ad hoc Credentials Review Function.

38. In addition to appointing virtually everyone involved in Dr. Klivington's adverse action process and despite not being in her chain of command, Lt Col Massengill gave guidance and recommendations to the 96 MSG/SGH throughout the process, even traveling to Eglin in November 2019 to personally meet with Dr. Klivington's leadership team and conferring with Col Hanson on two occasions prior to publication of Col Hanson's Final Decision.

39. Despite the massive and unlawful influence Lt Col Massengill maintained over Dr. Klivington's career and adverse action process, he then acted as the reviewing authority for her appeal from Col Hanson, ultimately recommending to the MPRB that he concurred with Col Hanson and disagreed with the CAAHP findings.

40. In disagreeing with the CAAHP findings, however, Lt Col Massengill made both factual and evidentiary determinations, even going so far as to independently substantiate allegations which the CAAHP initially unsubstantiated, and doing so with no oversight, no notice, with no opportunity for Dr. Klivington to protest, clarify, or correct his conclusions, and with no opportunity for Dr. Klivington to further appeal his findings.

41. On **September 24, 2020**, the office of the Surgeon General of the Air Force completed its review and decided to uphold Col Hanson's restriction of Dr. Klivington's privileges in "response to the preponderance of the evidence that demonstrated clinical deficits in [her] clinical and surgical practice that did or could pose a risk to safe patient care" and directed the action be reported to the NPDB and Dr. Klivington's state boards of licensure.

42. Dr. Klivington was unaware of the final decision by the MPDB or AFSG until after she received notice by the NPDB of an adverse reporting action indicating that on **August 26, 2020**, one month prior to the Surgeon General's direction to report, a "Title IV Clinical Privileges Action" based on "Incompetence" had been reported in "response to the preponderance of the evidence that demonstrated clinical deficits in Dr. Klivington's clinical and surgical practice that did or could pose a risk to safe patient care."

43. On June 14, 2021, Dr. Klivington submitted a statement to the NPDB to address its inaccurate report regarding incompetence serving as the basis for the action, pointing out that

there had been no finding of incompetence, no cited malpractice issues, and no substantiated instances of patient endangerment."

44. On September 15, 2021, Al Golden, a Dispute Resolution Manager with HHS, notified Cheryl Sbrockey, a Risk Management Coordinator with the Air Force Medical Readiness Agency ("AFMRA"), of a request by Dr. Klivington for the United States Secretary of Health and Human Services ("HHS") to conduct a review of the Clinical Privileges Action Report submitted to the NPDB.

45. In Mr. Golden's letter, he requested that Ms. Sbrockey respond in writing with documentation supporting AFMRA's responses to seven points of dispute submitted by Dr. Klivington pertaining primarily to the lack of incompetence, malpractice, or adverse outcome findings by the CAAHP, and findings of the QAI and PRP which were disproven by the CAAHP.

46. Ms. Sbrockey responded on September 23, 2021, introducing irrelevant and immaterial information about Dr. Klivington's personal and family issues prior to joining the Air Force, misrepresented statements in Dr. Klivington's statement of exceptions and corrections, and made improper and incorrect legal and factual conclusions.

47. In her letter, Ms. Sbrockey even indicated that extraneous facts not in evidence, such as Dr. Klivington's time in service, personal and family struggles "that potentially complicate" her clinical performance, and "lack of ownership in her shortcomings," were considered in rejecting her appeal.

48. On November 16, 2021, Mr. Golden sent Ms. Sbrockey a second letter and requested additional information regarding Dr. Klivington's dispute of the NPDB report, including copies

of written communications to Dr. Klivington and other documentation that might substantiate the information and documentation provided in the report.

49. In her second response on November 29, 2021, Ms. Sbrockey referenced a letter from September 23, 2021 and ten attachments thereto which was uploaded to the NPDB in response to Dr. Klivington's dispute but which have never been produced to Dr. Klivington despite multiple requests.

50. In addition to referencing the September 23 letter, Ms. Sbrockey did not deny or rebut Dr. Klivington's assertions that findings of incompetence or malpractice issues were never made, reinforced the fact that the CAAHP found Dr. Klivington did not breach the standard of care and unanimously recommended reinstatement of her privileges, and stated simply that "Dr. Klivington received all appropriate information during the adverse action process."

51. On December 22, 2021, the NPDB responded to Dr. Klivington's dispute in a letter indicating the Secretary of Health and Human Services reviewed the adverse action report and determined there was "no basis on which to conclude that the report should not have been filed in the NPDB or that it is inaccurate" and denied Dr. Klivington's request.

52. The NPDB letter further noted that the Secretary has limited authority for reviewing disputed NPDB reports and can "only review whether the Report accurately describes the reporter's action and reasons for action as stated in the reporter's decision documents."

53. Nevertheless, the NPDB letter failed to respond to Dr. Klivington's specific assertion that "incompetence" as the basis for the report is inaccurate as no finding of incompetence was ever made, but instead regurgitated the conclusions of Col Hanson and, inexplicably, Ms. Sbrockey – a civilian risk management coordinator whose only involvement in the entire process has been to

backseat quarterback the evidentiary and fact-finding determinations of authorized personnel and provide misleading or false information.

54. Finally, the NPDB letter quotes the findings and recommendations of both Col Hanson, Ms. Sbrockey, and the final determination of the Surgeon General, but notably leaves out any information from the MPDB, any of several required legal reviews by licensed attorneys, or any documentation whatsoever to refute Dr. Klivington's allegations that the entire process was done in violation of multiple Air Force and DoD regulations.

55. Because the kangaroo court ultimately resulted in the erroneous NPDB adverse action report, Dr. Klivington has suffered irreparable personal and professional harm, not limited to extreme emotional distress, loss of employment and employability, loss of enjoyment, financial hardship, pain and suffering, loss of current and future income, and legal costs.

### FEDERAL ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. § 701 ET SEQ.

**(Against All Defendants)**

56. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 55 herein.

57. Defendants are "agencies" within the meaning of the Administrative Procedure Act under 5 U.S.C. § 551.

58. The Defendants' Final Decision(s), and the eventual upholding of the Final Decision, constitute a final agency decision under the Federal Administrative Procedure Act for which Dr. Klivington has no other adequate remedy in court.

59. Pursuant to the Administrative Procedure Act, Dr. Klivington is entitled to have the Defendants' decision reviewed by this Court and set aside because the Defendants failed to act appropriately in their official capacity.

60. Pursuant to 5 U.S.C. § 706, this Court should set aside and hold unlawful the Defendants action because the Defendants' conclusions were:

    a.  Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    b.  Contrary to constitutional right, power, privilege, or immunity;

    c.  In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    d.  Without observance of procedure required by law;

    e.  Unsupported by substantial evidence;

    f.  Unwarranted by the evidence presented in Dr. Klivington's CAAHP hearing.

61. The facts supporting setting aside the Defendants' action are that the Defendants' decision to overrule Dr. Klivington's CAAHP findings are based on:

    a.  unlawful command influence by Lt Col Massengill and Col Campbell;

    b.  clear and substantial conflicts of interest among multiple parties involved in the process and subsequent appeal;

    c.  Lt Col Massengill's finding of facts and interpretation of evidence during appeal without opportunity for Dr. Klivington to rebuttal;

    d.  Failure to consult or obtain legal review prior to publishing any Final Decision;

    e.  Failure to apply appropriate standard of review;

    f.  Col Hanson's appellate review of his own Final Decision;

    g.  Failure to produce documents or information regarding Dr. Klivington's appeal;

    h.  Invalid appointment of Lt Col Massengill as a Consultant to provide appellate review;

    i.  Failure to follow proper appellate review procedures;

j.   Reporting Dr, Klivington's incomplete adverse action to NPDB;

k.   Reporting false information to NPDB such as the finding of "incompetence;"

l.   Introduction of statements, interpretations, and conclusions of Ms. Sbrockey during the appellate review process;

m.   Consideration of extraneous information during appeal, including Dr. Klivington's personal and marital issues, length of time in service, etc., which were not part of the evidentiary record during appeal;

n.   Submitting report of clinical adverse action to NPDB prior to direction by the AF/SG;

o.   Any other matters which may become known or available during discovery in this matter.

62. The Defendants' decision to restrict Dr. Klivington's privileges violated the Administrative Procedure Act because the evidence presented did not warrant restricting Dr. Klivington's privileges. On the contrary, the decision to restrict Dr. Klivington's privileges was arbitrary, capricious, in excess of the Defendants' jurisdiction and without substantial evidence because the evidence presented in the CAAHP did not support a finding that Dr. Klivington's privileges should be restricted or that she performed medical services below the standard of care or in any other manner that would warrant restricting her privileges.

63. Additionally, in restricting Dr. Klivington's clinical privileges, Defendants violated Dr. Klivington's due process rights because Dr. Klivington was not afforded a fair and adequate hearing or appeal process as alleged herein. Dr. Klivington's due process rights were also violated due to supplanted extraneous and irrelevant evidence and conclusory findings at multiple stages of the process, which prohibited Dr. Klivington from her rights to notice, to rebut such evidence, or to present supporting evidence on her own behalf.

64. The actions of the Defendants as set forth above violated Dr. Klivington's right to due process guaranteed by the Fifth Amendment of the United States Constitution.

14

65. The conduct of the Defendants was a substantial factor in causing harm to Dr. Klivington. As a result of the Defendants' conduct, the restriction of Dr. Klivington's privileges was reported to state medical boards and the NPDB. This has resulted in harm to Dr. Klivington and placed a stigma on her license that negatively impacts her professional career and reputation.

## <u>PETITION FOR WRIT OF MANDAMUS</u><br><u>PURSUANT TO 28 U.S.C. § 1361</u>

### (Against All Defendants)

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 65.

67. 28 U.S.C. § 1361 states that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

68. Defendants owed Dr. Klivington a duty to conduct investigations into misconduct fairly, lawfully, and in accordance with DoD and Air Force regulations, including, but not limited to, being free of bias or unlawful command influence, providing notice of the proposed action and the grounds asserted for it, the opportunity to present reasons for the proposed action not to be taken, the right to present evidence, including the right to call witnesses, the right to know opposing evidence, the right to cross-examine adverse witnesses, a decision based only on the evidence presented, opportunity to be represented by counsel, a requirement that the tribunal prepare a record of the evidence presented, and a requirement that the tribunal prepare written findings of fact and the reasons for its decision.

69. The evidence presented at Dr. Klivington's CAAHP hearing with respect to the medical services she rendered, demonstrated that she provided adequate medical treatment that was within the standard of care. The Defendants instead relied upon unauthorized, improper, and unlawful influence of Col Hanson, Col Campbell, Lt Col Massengill, and Ms. Sbrockey to

support a finding that Dr. Klivington's privileges should be restricted. This was an abuse of discretion because the actual evidence presented at the CAAHP showed that Dr. Klivington's medical treatment did not warrant restricting her privileges.

## DAMAGES

70. As a consequence of the forgoing misconduct of Defendants, Dr. Klivington sustained economic damages, pain and suffering, great mental stress, depression, humiliation, and loss of reputation.

71. As a consequence of the forgoing conduct of Defendants, Dr. Klivington has damages in an amount exceeding the jurisdictional requirements of the Court.

## PRAYER FOR RELIEF

1. To set aside and hold as unlawful the Defendants' decision to restrict Dr. Klivington's privileges pursuant to 5 U.S.C. § 701, *et seq*.

2. A writ of mandate pursuant to 28 U.S.C. § 1361 be issued ordering the Defendants to set aside its decision to restrict Dr. Klivington's privileges in its entirety.

3. A writ of mandate pursuant to 28 U.S.C. § 1361 be issued ordering the NPDB, through HHS, to remove the clinical adverse action report from Dr. Klivington's record.

4. For reasonable attorney's fees.

5. For costs of this action; and

6. For such other and further relief as this Court deems just and proper.

**WHEREFORE, PREMISES CONSIDERED**, Dr. Klivington demands judgment against Defendants in an amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including attorney's fees, plus pre and post judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted,

_____

Michael C. Fallings (D.C. Bar #MD19389)
*Attorney for Plaintiff*
TULLY RINCKEY PLLC
3724 Executive Center Drive, Suite 205
Austin, TX 78731
Tel: (512) 225-2822
Fax: (512) 225-2801
mfallings@fedattorney.com